William A. GEARY, Jr., Appellant,

v.

MISSOURI STATE EMPLOYEES' RETIREMENT SYSTEM, Respondent.

No. WD 48740.

Missouri Court of Appeals, Western District.

July 5, 1994.

William J. Travis and Carolyn A. Aylward, St. Louis, for appellant.

Allen D. Allred and James W. Erwin, St. Louis, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and ELLIS, JJ.

ELLIS, Judge.

This is an appeal by William A. Geary, Jr. from dismissal of his seven-count, first amended petition against the Missouri State Employees' Retirement System ("MOS-ERS") by the Circuit Court of Cole County. Geary filed the petition after the MOSERS Board of Trustees denied his appeal from the refusal of his request for retroactive payment of certain retirement benefits for the period from February 5, 1987 through September 1, 1992.

Geary filed a two-count suit against MOS-ERS on October 29, 1992. On December 3, 1992, MOSERS responded by filing a motion to dismiss Geary's petition. The motion did not dispute any of the factual allegations made by Geary, but argued that Geary was barred by the statutes and Constitution of Missouri from receiving the retirement bene-

fits prayed for in his petition. Before the court ruled on the motion, MOSERS filed an amended motion to dismiss on January 12, 1993 alleging a different legal ground for dismissal of Geary's claims. Three days later, on January 15, 1993, Geary filed an affidavit, attached to which were copies of two letters written by Geary to MOSERS officials on September 1, 1992, requesting retroactive payment of retirement benefits for past legislative service. The affidavit requested that the court receive those letters as true and correct copies of the original letters. MOSERS made no objection and the letters were received by the court. About two weeks later, on February 3, 1993, Geary filed his first amended petition, adding five new counts alleging various constitutional violations by MOSERS. On April 5, 1993, MOSERS filed a motion to dismiss Geary's first amended petition in which the factual allegations made by Geary were once again not disputed. Geary responded by filing a second affidavit containing a copy of a September 29, 1992 letter to Geary from the Executive Director of MOSERS and requesting that the court receive the letter. The letter was received by the trial court without objection. MOSERS' April 5, 1993, motion to dismiss Geary's first amended petition was argued on September 20, 1993, and on October 13, 1993, the trial court entered an order granting the motion and dismissing Geary's first amended petition. Geary then perfected this appeal.

As pleaded in the first amended petition, the facts are as follows. Geary served in the Missouri General Assembly as a State Representative for three full biennial terms, from January 1, 1957 through January 1, 1963. He was subsequently appointed to the bench, and served as a Circuit Judge of the St. Louis Circuit Court, Twenty–Second Judicial Circuit, from December 29, 1972 through August 31, 1992.

Geary was born on February 5, 1927 and became sixty years of age on February 5, 1987. On January 23, 1987, Geary made a written application to MOSERS for retirement benefits, to commence on his sixtieth birthday, based on his age and service in the General Assembly. MOSERS denied Geary's application, and the denial was upheld by the full MOSERS Board of Trustees. Geary was notified of the Board's decision by letter dated February 24, 1987. Geary did not seek judicial or any other review of that decision.

On August 31, 1992, Geary retired from his position as a circuit judge. On September 1, 1992, he again applied to MOSERS for retirement benefits based on his past service as a State Representative. He requested that he be paid those benefits for the period from February 5, 1987 to September 1, 1992, including accumulated interest at the statutory rate. MOSERS denied the request for payment of "unpaid benefits," and Geary appealed to the MOSERS Board of Trustees, which denied the appeal on September 29, 1992. Geary then brought the action which is the subject of this appeal.

Geary's first amended petition was in seven counts. Count I appealed MOSERS' administrative decision denying him legislative service retirement benefits for the period from February 5, 1987 to September 1, 1992, while Count II claimed MOSERS breached its contract with Geary by denial of the requested payments. In Counts III through V, Geary contended that if certain Missouri statutes or MOSERS' application of certain provisions of the Missouri Constitution deny him recovery of the benefits claimed, such statutes and MOSERS' application of the Missouri Constitution should be declared unconstitutional as a denial of equal protection of the law. In Count VI, Geary sought relief asserting deprivation of property (the requested benefits) without due process of law because no reason was given for denial of his application. And finally, in Count VII, Geary claimed a taking of property for public purposes without just compensation because he was not being compensated for the withholding of the claimed benefits.

Geary presents two points on appeal, both with numerous sub-parts based on the grounds asserted for dismissal in MOSERS' motion to dismiss. First, he contends the trial court erred in dismissing the first amended petition because, when viewed in the light most favorable to him, it demonstrates grounds upon which relief can be

granted. And second, he urges trial court error because the statutes applied by MOS-ERS, and MOSERS' actions, violate the Missouri and United States Constitutions.

■ We review the trial court's order of dismissal as a grant of summary judgment. Only those matters appearing on the face of the petition can be considered in a motion to dismiss for failure to state a claim. *Empiregas, Inc. v. Hoover Ball & Bearing Co.*, 507 S.W.2d 657, 660 & n. 4 (Mo.1974); *Feinstein v. Edward Livingston & Sons, Inc.*, 457 S.W.2d 789, 792 (Mo.1970). When matters outside the pleadings are presented to and not excluded by the trial court, a motion to dismiss a pleading for failure to state a claim upon which relief can be granted is to be treated as one for summary judgment. Rule 55.27(a); *Black Leaf Products Co. v. Chemsico, Inc.*, 678 S.W.2d 827, 829 (Mo.App.1984).

■ When, as Geary did here, the plaintiff introduces evidence beyond the pleadings, he is charged with knowledge that the defendant's motion to dismiss is thereby "*automatically* converted to a motion for summary judgment." *Hyatt Corp. v. Occidental Fire & Cas. Co.*, 801 S.W.2d 382, 392 (Mo.App.1990) (emphasis in original); *see also Schwartz v. Lawson*, 797 S.W.2d 828, 833 (Mo.App.1990) (when plaintiffs filed affidavits in opposition to defendant's motion to dismiss for failure to state a claim, they "convert[ed] [the] motion to dismiss ... into a motion for summary judgment.") Under the circumstances, Geary was "placed on notice that the motion was converted when he introduced evidence beyond the pleadings." *Shafer v. Western Holding Corp.*, 673 S.W.2d 117, 119–20 (Mo.App.1984). *See also Williams v. Mercantile Bank*, 845 S.W.2d 78, 83 (Mo.App.1993) (where "no additional evidence was needed by the trial court to dispose" of the case, a motion to dismiss can properly be considered a motion for summary judgment even though "no matters outside the pleadings were presented to the court.")

■ We therefore review the trial court's order under the summary judgment standard of review. "Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law. *Id.*

> When reviewing the entry of summary judgment, we view the evidentiary record in the light most favorable to the party against whom summary judgment was granted, determine if any genuine issue of fact exists which would require a trial, and determine if the judgment is correct as a matter of law. We will affirm if the judgment is sustainable as a matter of law under any theory.

*State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886 (Mo.App.1993) (citations omitted); Rule 74.04(c). A genuine issue of fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382. In the case at bar, there is no genuine issue of fact requiring a trial because MOSERS never disputed any of the factual allegations made by Geary in his original or first amended petitions. "[I]t is not the 'truth' of the facts upon which the court focuses, but whether those facts are disputed. Where they are not, the facts are admitted for purposes of analyzing a summary judgment motion." *Id.*; *see also Villa*, 847 S.W.2d at 888 (no question of material fact exists with respect to any issue where the party moving for summary judgment does not challenge his opponent's alleged facts). We therefore need only determine whether the trial court correctly determined that MOSERS demonstrated it was entitled to judgment as a matter of law on each of the seven counts contained in Geary's first amended petition. *See ITT Commercial Fin. Corp.*, 854 S.W.2d at 380 ("The key to summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question.")

### COUNTS I AND II

In its motion to dismiss, MOSERS asserted, *inter alia*, that Missouri statutes prohibit a person serving in appointive state office from receiving retirement benefits for past legislative service and Geary was therefore ineligible for such benefits until he retired from his position as circuit judge.

Geary counters by contending that he applied for, and was entitled to, a "normal annuity" pursuant to § 104.400.2, RSMo Supp.1992, which provides, in pertinent part, that "[a]ny member ... who has attained sixty years of age and has served at least three full biennial assemblies as a member of the general assembly, may retire with a normal annuity." He claims that by virtue of this section he was entitled to retire on February 5, 1987 when he turned age 60, since he satisfied the age and service requirements in effect on that date. Geary then reasons that upon his retirement from the position of circuit judge on August 31, 1992, he was entitled to receive the "back" retirement benefits due him as a former legislator, plus accumulated interest, for the period February 5, 1987 to September 1, 1992.[1] He reaches this conclusion by relying on the provisions of § 104.370.2, RSMo 1986 (later amended, but in effect on February 5, 1987). This section provided that its terms regarding "normal annuity" benefits for General Assembly service "shall apply to any member who has not received any payment of a normal annuity ... on September 28, 1985, even though he is not an employee on September 28, 1985...." *Id.* A "member" was defined, as of February 5, 1987, by § 104.310(27), RSMo 1986[2] as "a member of the Missouri state employees' retirement system, without regard to whether or not the member has been retired." Thus, Geary reasons, since he was a member on February 5, 1987, had not received any annuity payments on September

ber 28, 1985, and had applied for a "normal annuity," he is entitled to a lump sum payment of benefits not paid from the time he attained age sixty to the time he retired as circuit judge.

This is a case of first impression in Missouri, and involves construction of Chapter 104, RSMo Supp.1992. This chapter provides for retirement of state officers and employees. Section 104.320, RSMo Supp. 1992, establishes MOSERS as a body corporate and as an instrumentality of the State of Missouri. Section 104.320 also vests MOSERS with the powers necessary to enable it to carry out the purposes of § 104.010 and §§ 104.320–.800.

In construing statutory provisions, our primary responsibility is to determine the intent of the legislature based on the language used, and give effect to that intent. *Hagely v. Board of Educ. of Webster Groves Sch. Dist.*, 841 S.W.2d 663, 667 (Mo. banc 1992). We must construe provisions of the entire legislative act together and, to the extent reasonably possible, harmonize all provisions. *Id.* Furthermore, related clauses must be considered when construing a particular portion of a statute. *Id.*

A review of the applicable provisions of Chapter 104 from an historical perspective clearly demonstrates that the statutes have never authorized, nor has the legislature ever intended, that a former member of the General Assembly entitled to retirement benefits for past legislative service shall be paid such benefits for any period during which that former legislator is serving as an elected or appointed state officer, whether he is beyond normal retirement age or not. We therefore affirm the trial court's entry of summary judgment against Geary on Counts I and II of his first amended petition.[3]

---

1. Since September, 1992, MOSERS has paid Geary retirement benefits based both on his service as a former legislator (governed by Chapter 104) and as a former judge (governed by Chapter 476). This lawsuit concerns his entitlement to the former during the period February 5, 1987 through September 1, 1992.

2. In 1988, this statute was repealed and the definitions contained therein were moved to § 104.010. *See* Laws of Mo. 1988, p. 464. Sec-

tion 104.010(24), RSMo Supp.1992, defines a "member" as "a member of the Missouri state employees' retirement system without regard to whether or not he has been retired."

3. It is unclear from the record whether the particular statutes upon which we reach this conclusion were considered by the trial court. Both parties did, however, present arguments regarding those statutes in their appellate briefs. In any event, since a grant of summary judgment

MOSERS was created by statute in 1957. The original act (§§ 104.310–.550, RSMo 1959) contained no special provisions relating to service in the General Assembly, although § 104.380.1(3), RSMo 1959, provided, in effect, that no member of the General Assembly shall retire until his term of office was completed. The first major change in this area came with adoption of H.B. No. 33 in 1967, which amended § 104.380.2, renumbered the former §§ 104.380.3 and 104.380.4 as §§ 104.380.4 and 104.380.5, respectively, and inserted a new § 104.380.3. *See* Laws of Mo. 1967, p. 190. Section 104.380.3, RSMo Supp. 1967, as it pertains to this case, provided that if a MOSERS member, after serving six or more years in the General Assembly, was appointed to a state office, such person could, *"at the end of such term or employment,* elect to take *on retirement,"* the benefits to which he was entitled for his past service in the General Assembly *"or* [those retirement benefits] which would be due him" based on his service as a state officer. (Emphasis added).

Although the legislature made minor changes in wording and punctuation, § 104.380.3 remained essentially unchanged until 1981.[4] The 1981 revision was significant in that the word *"or"* was changed to *"and,"* so that a member of MOSERS who had served in the General Assembly for three or more biennial assemblies and was thereafter appointed to state office, could *"at the end of such term or employment,* take *on retirement"* the amount due for his past service in the General Assembly *and* "that which would be due [him] as an officer or employee" of the State of Missouri. § 104.380.3, RSMo Supp.1981 (emphasis added). The 1981 legislation also provided an exception that if the member had served as a legislator for at least ten years before accepting state employment, and if he had not been employed for at least ten years so as to be eligible for an employee's retirement benefit, he was to be credited "with additional service as a legislator for each two-year period of employment for which he has not otherwise received credit in determining the amount of annuity due him." *Id.* In 1982, the former § 104.-380.3 was renumbered § 104.380.3(1) and a new § 104.380.3(2), not relevant to this discussion, was added. *See* Laws of Mo. 1982, p. 271; § 104.380.3, RSMo Supp.1982.

In the 1984 legislative session, § 104.380.-3(1) was recodified, with a change irrelevant to this discussion, as § 104.370.2, RSMo Supp.1984. The 1985 General Assembly then adopted extensive revisions to § 104.370; indeed, the entire section was rewritten. However, as related to the issue under consideration, both § 104.370.2, RSMo Supp.1985 and § 104.370.2, RSMo 1986, provided that a system member who has served at least three full biennial assemblies as a member of the General Assembly and who is appointed to a state office "before, after, or before and after, his service as a member of the general assembly, ... may, *at the end of such employment, receive upon retirement,* at or after the member's normal retirement age, the amount which shall be due the member for creditable service as a member of the general assembly." (Emphasis added.) While § 104.370.2 was subsequently amended in 1988, 1989, and 1992, this language has remained unchanged. *See* § 104.370.2, RSMo Supp.1988; RSMo Supp.1989; and RSMo Supp.1992.

█ Despite numerous amendments, modifications, and rewrites since 1967, Chapter 104 has consistently reflected a clear legislative intent that a person who has served at least three terms in the General Assembly, and who is subsequently appointed to a state office, is only entitled to retirement benefits for service in the General Assembly *after* retirement from state office. In other words, an appointive state officer who has previously served three terms in the

---

may be sustained on the basis of a valid argument not presented to the trial court and raised for the first time on appeal, *Roberts Fertilizer, Inc. v. Steinmeier,* 748 S.W.2d 883, 886 (Mo.App. 1988), the question is academic. *See also ITT Commercial Fin. Corp.,* 854 S.W.2d at 387–88 (because appellate review of a grant of summary judgment is *de novo,* "the trial court's order may be affirmed ... on an entirely different basis than that posited at trial.")

4. *See* § 104.380.3 in RSMo 1969; RSMo Supp. 1973; RSMo Supp.1975; RSMo Supp.1976; RSMo 1978; and RSMo Supp.1980.

General Assembly is ineligible for retirement benefits based on such General Assembly service until retirement from the appointive state office.

This conclusion is particularly evident from the wording of § 104.370.2, RSMo Supp.1992, which expressly declares that a former legislator who is appointed to state office may, **"*at the end of such employment, receive upon retirement, ...* the amount which shall be due [him] for creditable service as a member of the general assembly."** (Emphasis added). The phrase "creditable service," as it applies to the case at bar, merely means Geary's years of service in the General Assembly. *See* §§ 104.310(13) and 104.310(14), RSMo 1986; *superseded by* §§ 104.010(12) and 104.010(13), RSMo Supp.1992. The only reasonable construction of the phrase "the amount which shall be due" as used in § 104.370.2 is the monthly payment the former legislator is entitled to receive as a retirement benefit. This is evident because § 104.370.1 sets out the manner of calculating the monthly payment to which a former member of the General Assembly is entitled. The conclusion is inescapable that § 104.370.2, RSMo Supp.1992, and its forerunners back to 1967, prohibit a former legislator at or after normal retirement age from "double dipping" by receiving legislator retirement benefits for any period during which he is serving in appointive state office.

■ In the case at bar, Geary's first amended petition pleaded that he was appointed a circuit judge after having served in the General Assembly and that he did not retire from his circuit judgeship until August 31, 1992. The position of circuit judge of the St. Louis Circuit Court, in the Twenty–Second Judicial Circuit is an appointive state office. *See* Mo. Const. art. V, § 25(a); *State ex rel. Zevely v. Hackmann*, 300 Mo. 59, 254 S.W. 53 (banc 1923). Therefore, whether Geary's "normal retirement age" was sixty (as Geary argues) or sixty-five (as MOSERS claims), Geary was ineligible to receive any retirement benefits for his past service as a state legislator until September 1, 1992, the day after he resigned as circuit judge and was no longer a state officer. Thus Geary was not entitled to payment of those retire-

ment benefits during the period February 5, 1987 to September 1, 1992 *as a matter of law.* Since both Counts I and II of Geary's first amended petition sought payment of those benefits for that period, the trial court properly rendered summary judgment against him on those counts. Geary's first point is denied.

### COUNTS III THROUGH V

■ Counts III through V of Geary's first amended petition generally allege that if certain Missouri statutes, or MOSERS' application of certain provisions of the Missouri Constitution, prohibit his recovery of the benefits claimed, such statutes and MOSERS' application of the Missouri Constitution should be declared unconstitutional as a denial of equal protection of the law. In the case at bar, we have determined that § 104.370.2, RSMo Supp.1992, and its predecessors clearly establish that Geary was ineligible for retirement benefits based on his past legislative service until he retired from his position as circuit judge. As will be seen, because the equal protection claims Geary attempts to bring in Counts III through V are based on speculation by Geary as to the legal basis for the denial of the retirement benefits he claims were due him, the trial court's entry of summary judgment in MOSERS' favor on those three counts was also proper.

In Count III of his first amended petition, Geary alleges that MOSERS denied his claim for benefits on the basis of the provisions of § 104.380.2, RSMo 1986. Count IV of the first amended petition asserts MOSERS denied Geary the claimed benefits based on the provisions of § 104.335.1, RSMo 1986, and Count V alleges the denial was based on MOSERS' application of the provisions of Article III, §§ 38(a) and 39(3) of the Missouri Constitution. In each count, he claims he and others similarly situated are improperly discriminated against, and are thereby denied equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution and Article I, § 2 of the Missouri Constitution. The prayer in Counts III and IV is that the court declare the respective statutory provisions unconstitutional and award him the requested benefits.

In Count V, Geary prayed that MOSERS' application of the Missouri constitutional sections be declared unconstitutional and that he be awarded the benefits requested. Since we have determined that the denial of retirement benefits was instead sustainable under § 104.370.2, RSMo Supp.1992, Geary was not denied equal protection of the law for the reasons alleged in Counts III, IV, and V. The trial court thus did not err in entering summary judgment against Geary on those counts.

## COUNTS VI AND VII

 In Count VI, Geary alleges he became entitled to a normal annuity on February 5, 1987; that he became entitled to payment of unpaid monthly annuity payments for the period from February 5, 1987 to September 1, 1992, together with accumulated interest when he retired as circuit judge on September 1, 1992; that MOSERS deprived him of those payments when it denied his application for unpaid, accumulated retirement benefits; and thereby deprived him of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution and Article I, § 10 of the Missouri Constitution. He prayed that the court declare the denial of benefits unconstitutional and award same to him. Here again, the premise of Geary's purported cause of action is misplaced. As we have held, Geary was ineligible for benefits based on his past legislative service until he retired as circuit judge. Therefore, he became entitled to receive such benefits on September 1, 1992, not February 5, 1987. Since he was not eligible for those benefits during the period from February 5, 1987 to September 1, 1992, he was not, and could not have been, deprived of property, with or without due process of law, and his claim must fail.

For the same reason, Geary's Count VII was properly ruled against him on summary judgment. In this count, Geary asserts eligibility for benefits as of February 5, 1987, and entitlement to payment of unpaid benefits accrued during the period from that date to September 1, 1992, upon his retirement as circuit judge. He contends denial of payment of those benefits constituted a taking of property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Since he was not eligible for benefits for the period in question, he had no "property" taken from him. MOSERS was therefore entitled to judgment as a matter of law on Count VII of Geary's first amended petition.

The judgment of the trial court is affirmed.

All concur.